**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-CR-91-005-TCK |
| ) | (08-CV-88-TCK-TLW) |
| CURTIS DEON JONES, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court are Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 806) ("§ 2255 Motion") and Motion to Amend and/or Supplement Motion Pursuant to § 2255 (Doc. 894) ("Motion to Amend and/or Supplement"). The Government filed a response to the § 2255 Motion (Doc. 839), and Defendant thereafter filed a reply (Doc. 885).

**I.     Background**

On December 19, 2005, a federal grand jury returned a multiple-count Superseding Indictment, which charged Defendant and nine other co-defendants in a racketeering conspiracy. (*See* Doc. 247.) On October 17, 2006, Defendant, represented by W. Creekmore Wallace ("Wallace") and Carla Mullins Root ("Root"), entered a plea of guilty to Count One of the Superseding Indictment, charging him with Racketeering Conspiracy in violation of 18 U.S.C. §§ 1962(d) and 1963. (*See* Doc. 729.) Defendant's plea was made before Magistrate Judge Sam A. Joyner ("Magistrate Joyner") and was pursuant to a Plea Agreement with the Government. (*See id.*; Doc. 729-2.) As part of the Plea Agreement, Defendant waived his right to a direct appeal and to collaterally attack the conviction and sentence under 28 U.S.C. § 2255, except for ineffective assistance of counsel claims challenging the validity of the plea or the rights waiver. (*See* Doc. 729-

2 at 3.) Also included in the Plea Agreement was an admission by Defendant that he shot an individual by the name of James Stewart ("Stewart") in conjunction with his gang activities. (*See id.* 6.) Defendant further stated that he was involved in the shooting of Stewart during his plea colloquy before Magistrate Joyner. (Tr. Plea Hr'g 15:18-22.) On January 3, 2007, this Court sentenced Defendant to 260 months imprisonment, which was within the advisory sentencing guidelines range of 210 to 262 months. (*See* Docs. 771 (Minutes of Sentencing), 788 (Judgment and Commitment).) Also during the sentencing, the Court ordered Defendant to participate in an anger management program. (*See* Doc. 771.)

Defendant appealed his conviction to the Tenth Circuit, despite having waived his right to do so under the Plea Agreement. In response, Wallace filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967), wherein Wallace indicated that he believed it would be a violation of the Rules of Professional Conduct to continue representation of Defendant. After reviewing the Plea Agreement and transcripts of the plea and sentencing hearings, the Tenth Circuit held that Defendant had waived his right to appeal and dismissed Defendant's appeal. *See United States v. Jones*, 236 Fed. Appx. 449, 450 (10th Cir. 2007).

On February 19, 2008, Defendant, appearing *pro se*, filed the instant § 2255 motion (Doc. 806), identifying the following grounds: (1) ineffective assistance of counsel due to coerced and involuntary plea; (2) ineffective assistance of counsel due to incriminating statements made by counsel during sentencing; (3) ineffective assistance of counsel for failure to conduct an inquiry into

Defendant's mental competency; and (4) ineffective assistance of counsel for failure to make a claim of insufficient evidence and abandonment of a viable defense.[1]

## II.     Motion to Amend and/or Supplement

On October 1, 2010, almost two years after the Government responded to his § 2255 Motion, Defendant filed a Motion to Amend and/or Supplement, requesting leave to amend and/or supplement his § 2255 Motion to assert that:

1.  [C]ounsel knew or reasonably should have known that the death used against [Defendant], was caused by another, and that person had pled guilty to that offense prior to the plea of [Defendant].

2.  [T]rial counsel coerced [Defendant] to plea guilty to an offense that he did not commit, by threatening with the alleged fact that he would get a life term of imprisonment if he did not take the plea.

3.  The [G]overnment knew that another had ple[d] guilty to the murder, and the use of it was coercion in the first degree, because the [G]overnment knew that Paul Summers had pled guilty to the murder since it sentenced him concurrent to that sentence.

4.  [Defendant] would not have pled guilty if counsel had not insisted that he would get two life sentences if he went to trial, thus, the outcome would have been different.

(Mot. to Amend and/or Supplement 1-2.) The Court finds that these are not new claims so as to require amendment of Defendant's § 2255 Motion. Instead, Defendant's Motion to Amend and/or Supplement provides additional details on grounds already asserted in his § 2255 Motion. The Court therefore adjudicates Defendant's motion as a motion to supplement and grants same. The Court will address the supplemental facts provided by Defendant herein.

---

[1] This last ground of error is alleged in "Affidavits of Truth" accompanying the brief in support of Defendant's § 2255 Motion.

3

**III.     § 2255 Motion**

    **A.     Evidentiary hearing**

In the brief supporting his § 2255 Motion, Defendant requests an evidentiary hearing. (*See* Br. in Support of § 2255 Mot. 16.) The Court finds that an evidentiary hearing is not necessary because "the motion and the files and records of the case conclusively show that [Defendant] is entitled to no relief." 28 U.S.C. § 2255(b); *see also Townsend v. Sain*, 372 U.S. 293, 318 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). Therefore, the Court denies Defendant's request, and no evidentiary hearing will be held.

    **B.     Standard for Ineffective Assistance of Counsel Claim**

A defendant who claims ineffective assistance of counsel must first show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 46 U.S. 668, 688 (1984). Judicial scrutiny of an attorney's conduct is highly deferential, and a defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that the "challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotations and citations omitted); 690 ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Second, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In addressing an ineffective assistance of counsel claim, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

### C. Ineffective Assistance of Counsel Claim Due to Coerced and Involuntary Plea

Defendant asserts that his plea was coerced and involuntary. Specifically, Defendant argues that the Court did not adequately inquire as to whether the plea was voluntary, and counsel failed to ensure that Defendant understood the charge and the nature of the constitutional protections he was waiving. (*See* Br. in Support of § 2255 Mot. 4-5.) Defendant cites to various statements by counsel in support of this assertion. First, Defendant cites to Wallace's statement, made during the sentencing hearing, that counsel "had a great deal of difficulty getting [Defendant] to plead guilty . . . because [Defendant] ha[d] a very difficult problem in admitting to any involvement with crack cocaine," (Tr. Sent. Hr.'g 6:10-14), as support for the involuntary nature of his plea. Defendant also claims that Root made certain statements in order to coerce him to plead guilty – namely, (1) that a white jury would never believe Defendant's innocence, (2) that Defendant would still face state charges even if he won in federal court, and (3) that Defendant should not tell the Court that "Stewart pulled out a gun just to say that [Defendant] shot him because the [Court] would not want to hear that." (Br. in Support of § 2255 Mot. 14.) Finally, as a supplement to this ground for relief, Defendant contends that counsel stated he would "get a life term of imprisonment if he did not take the plea," and that he would not have pled guilty if counsel had not insisted that he would face life imprisonment. (Mot. to Amend and/or Supplement 1-2.)

A review of the plea colloquy demonstrates that Defendant's allegations of coercion are in error. Prior to accepting Defendant's guilty plea, Magistrate Joyner fully explained Defendant's rights to him, determined the factual basis for the plea, and asked questions to ensure that Defendant understood such rights, was voluntarily pleading guilty, and was satisfied with counsel's representation. In confirming that Defendant's plea was voluntary, Magistrate Joyner asked

Defendant whether "anyone made any promises or assurances to [him] . . . in an effort to induce [him] to plead guilty," to which Defendant responded, "No, sir." (*Id.* at 8.) Magistrate Joyner also inquired whether Defendant "was pleading guilty of [his] own free will because [he was] guilty," (*id.*), and whether the "plea of guilty and [his] waiver of [his] rights [was] made voluntarily and completely of [his] own free choice, free of any force, or threats, or pressures from anyone," (*id.* at 18). Defendant responded to both questions in the affirmative. (*Id.* at 8, 18.) Finally, Magistrate Joyner asked Defendant, "understanding the nature of the charges, your right to a jury trial and that you voluntarily waived your right to a jury trial and knowing the effect and consequences of the plea of guilty, how do you plead to this indictment?" (*Id.* at 17.) Defendant replied by stating, "guilty." (*Id.*) Based on this colloquy, the Court rejects Defendant's argument that Magistrate Joyner did not adequately inquire as to whether the plea was voluntary.

With regard to Defendant's assertion that he failed to adequately understand the charge and the nature of the constitutional protections he was waiving, the Court also finds such position without merit. Again, the plea colloquy demonstrates that Magistrate Joyner outlined each of the rights Defendant was waiving, (*see id.* at 10-11 (discussing right to appeal; right to plead not guilty; and specific rights at trial, including right to be presumed innocent, right to attorney, right to see and hear all witnesses, and right to testify or to decline to testify)), and that Defendant represented that he understood such rights and was willing to waive same, (*id.* (stating "Yes" in response to question of whether Defendant "wish[ed] to waive [his] right to a jury trial")).

Defendant makes much of Wallace's statement that counsel "had a great deal of difficulty getting [Defendant] to plead guilty . . . because [Defendant] ha[d] a very difficult problem in admitting to any involvement with crack cocaine." (Tr. Sent. Hr'g 6:10-14). According to

Defendant, this statement demonstrates that his plea was involuntary. Read in context, however, the Court does not reach such a conclusion. Specifically, Wallace went on to state that Defendant had difficulty in accepting a role with crack cocaine because of his mother's involvement with the drug. (*Id*. 6:15-22.) Wallace further stated that he had to explain to Defendant that he was not charged with dealing crack cocaine, but was charged with being involved with individuals who dealt crack cocaine. (*Id.* 6:15-17.) Given this context, the Court does not find Wallace's statement indicative of any coercion to plead guilty.

Nor does the Court find Root's statements and the statements made regarding the threat of life imprisonment, as alleged by Defendant, to indicate coercion to plead guilty. These statements are more akin to strategic analysis than coercion to plead guilty. As noted by the Tenth Circuit, "[a]dvice – even strong urging by counsel does not invalidate a guilty plea." *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) (further noting that "one central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests"). This is not a situation where counsel materially misinformed Defendant of the consequences of his plea or told Defendant that he had no choice but to plead guilty. *See id.* at 1213 (citing same as examples of counsel coercion to enter plea of guilty). Rather, counsel was assimilating relevant information and advising Defendant of the possible results if he did not plead guilty.

Based on the above, the Court finds no basis for Defendant's claim that he was improperly induced to plead guilty. Applying the *Strickland* standard, as outlined above, the Court further finds that counsel did not perform deficiently. Thus, the Court concludes that Defendant is not entitled to relief under 28 U.S.C. § 2255 based on this claim of ineffective assistance of counsel.

### D.     Ineffective Assistance of Counsel Claim Due to Statements Made During Sentencing Hearing

As a second ground for his § 2255 motion, Defendant argues ineffective assistance of counsel due to Wallace's statement, made during the sentencing hearing, that Defendant had been "jumped into the Hoover Crips" when he was thirteen or fourteen years old. (Tr. Sent. Hr'g 7:14-17.) Defendant maintains that this comment "could not have aided counsel in seeking a downward departure" and "infect[ed] the plea process considering Judge Kerns [sic] [v]iews on gangs and gang violence." (Br. in Support of § 2255 Mot. 5.) Defendant further argues that but for these statements, he would have received a lower sentence. (*See id.* 6.) In response, the Government contends that this ground falls within the appellate waiver included in Defendant's Plea Agreement.

As outlined in the Plea Agreement, Defendant waived his right to "collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." (Doc. 729-2 at 3.) In *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004), the Tenth Circuit discussed the competing interests to be considered in cases involving rights waivers contained in plea agreements:

> Given the importance of plea bargaining to the criminal justice system, we generally enforce plea agreements and their concomitant waivers of appellate rights. *See*, *e.g.*, *United States v. Hernandez*, 134 F.3d 1435, 1437 (10th Cir. 1998) ("A defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable."). We do so, in large part, because public policy strongly supports such waivers as they benefit defendants, the government, and society at large. *See United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001). Nevertheless, we consistently hold that "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *Id.* at 1173 (quotation omitted).

*Id.* at 1318. The Tenth Circuit has also held that "a waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where

8

both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). In *Cockerham*, the Tenth Circuit recognized an exception to this general rule, holding "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver. Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable." *Id.* at 1187.

Under the facts of this case, the Court finds the waiver provisions of the Plea Agreement preclude consideration of the claim raised in Defendant's § 2255 Motion. *See Hahn*, 359 F.3d at 1325-27 (adopting three-prong test for evaluating validity of appellate waiver). First, this claim of ineffective assistance of counsel falls within the scope of the Plea Agreement waiver. Although Defendant's argument is framed in terms of ineffective assistance of counsel, it does not challenge counsel's actions in the context of the "the validity of the guilty plea or [the] waiver," as permitted in the Plea Agreement. (Doc. 729-2 at 3.) Rather, his allegations of ineffective assistance of counsel relate to sentencing and therefore fall squarely within the terms of his post-conviction waiver. Furthermore, as discussed above, *see supra* Section III.C, the Court rejects Defendant's argument that his plea was somehow coerced or involuntary, and Defendant offers no further argument that his waiver of appellate rights, contained in the Plea Agreement, was not knowing or voluntary. Finally, the Court finds that enforcement of the waiver will not result in a miscarriage of justice. Thus, Defendant's waiver is valid, and the claim asserted in his § 2255 motion regarding statements made at the sentencing hearing is barred by such waiver.

Even if the Court were to find this argument properly raised, the Court finds Defendant has not shown that counsel rendered deficient performance in making the challenged statements or that

9

he was prejudiced by such statements, as required under *Strickland*. *See Strickland*, 46 U.S. at 688, 694. Defendant's involvement in the Hoover Crips was included in both the Plea Agreement and the presentence report. Wallace therefore did not divulge information that was previously unknown to the Court. Further, Defendant has not overcome the presumption that Wallace's decision to address the beginning of Defendant's gang involvement constituted a strategic decision to provide context and explanation for Defendant's actions. *See id*. at 689 (noting that the defendant must overcome presumption that the challenged action "might be considered sound trial strategy").

### E. Ineffective Assistance of Counsel for Failure to Conduct Inquiry into Defendant's Competency

In his § 2255 Motion, Defendant argues that counsel erred in failing to file a motion for psychological examination despite the fact that during the sentencing hearing, counsel indicated that Defendant needed to be evaluated. In the accompanying brief to his § 2255 Motion, Defendant focuses his arguments on the Court's failure to order a psychological examination, as opposed to counsel's failure to move for such an examination, arguing that such an examination was necessary because Defendant suffered from mental impairments that "ha[d] a significant impact on [Defendant's] ability to understand the proceeding." (Br. in Support of § 2255 Mot. 9.) Because the focus of Defendant's argument differs in the § 2255 Motion and the supporting brief, the precise basis of this ground of relief is somewhat unclear. Either way, however, the Court finds that Defendant's arguments with regard to competency do not entitle him to relief.

During Defendant's plea, Magistrate Joyner asked Defendant if he had "ever been treated for any mental illness at any time." (*See* Tr. Plea Hr'g 4:14-15.) Defendant responded by stating, "[w]hen I was younger," and estimated that he was around six years old at the time of treatment. (*Id.* 4:16-18.) Magistrate Joyner then asked Defendant what he was treated for at that time, and

10

Defendant replied, "my anger." (*Id.* 4:19-21.) Magistrate Joyner also asked Wallace if he knew of any reason that Defendant was not "fully and completely competent to continue with this proceeding." (*Id.* 5:1-5.) Wallace stated that he "kn[e]w of no reason." (*Id.* 5:6) Based on this exchange, the Court had no reason to believe that a psychological examination was necessary or that Defendant was not competent to plead guilty. Defendant's statement that he was treated for anger issues as a child provides no basis to believe that Defendant was in any way unable to understand the plea proceedings or the consequences of his plea. Defendant's response to further questioning indicated that, *inter alia*, he was fully cognizant of what was occurring, as he indicated he had seen the charges against him, (*id.* 5:7-10), had discussed such charges with his counsel, (*id.* 5:11-13), was satisfied with the services of his counsel, (*id.* 5:14-16), had reviewed the plea agreement, (*id.* 5:17-19), understood the plea agreement, (*id.* 8:9-11; 9:1-3), had discussed the sentencing guidelines with his counsel, (*id.* 10:7-9), and was aware of the rights he was waiving, (*id.* 11:2-25; 12:1-16). On the basis of Defendant's "admission, [d]emeanor and responsive answers to [Magistrate Joyner's] questions, [Magistrate Joyner] [found Defendant] fully competent and capable of entering an informed plea" and also found that Defendant was "aware of the nature of the charges and the consequences of the plea." (*Id.* 19:20-24.) Further, given the lack of any indication that Defendant suffered from a mental condition impairing his competency to plead guilty, the Court finds that Defendant's counsel did not render deficient performance in relation to Defendant's competency.

The fact that Defendant's mental health was discussed at the sentencing hearing does not alter the Court's conclusion regarding Defendant's competency or the need for a psychological evaluation. Therein, Wallace requested that Defendant be psychologically evaluated at the Bureau of Prisons ("BOP") in order to address Defendant's anger issues and possible Attention Deficit

11

Disorder ("ADD"). (*See* Tr. Sent. Hr'g 9:20 – 10:17.) Neither Wallace or Defendant made any statements at sentencing suggesting that Defendant had a mental illness or impairment which necessitated an immediate psychological examination or affected his ability to understand the plea. Rather, Wallace's request for evaluation was in the context of asking the Court to consider programming available at the BOP that could help Defendant become a productive citizen upon reentry into society. (*See id.* 9-11.) Given this context and the absence of any suggestion that Defendant's possible ADD or anger issues affected the competency of Defendant's prior plea, the Court rejects this ground for relief.

      **F.    Ineffective Assistance of Counsel for Failure to Make a Claim of Insufficient Evidence and Abandonment of Viable Defense**

In this ground of relief, Defendant challenges the evidence regarding his role in the murder of Stewart and the failure of counsel to assert a defense on such basis. Specifically, in an "Affidavit of Truth" attached to the brief supporting Defendant's § 2255 Motion, Defendant asserts ineffective assistance of counsel on the basis of the following: "Counsel could have afforded [Defendant] a reliable adversarial process through claims of [i]nsufficient [e]vidence, that [Defendant] neither intentionally arranged the murder of [S]tewart or [a]ided or [a]betted with specific intent to cause murder. Instead[,] counsel abandoned a viable defense without just cause." (Br. in Support of § 2255 Mot. 11.) In another "Affidavit of Truth," Defendant alleges that because "[S]tewart was not killed according to the elements in the indictment, but as a result of self defense," the Court should find counsel ineffective and allow Defendant "to plead [a]new or whatever the [C]ourt deems necessary." (*Id.* 12.) Finally, as a supplement to this ground for relief, Defendant claims that counsel and the Government knew or reasonably should have known that another individual pled

guilty to "the death used against [Defendant]" — namely, the death of Stewart. (*See* Mot. to Amend and/or Supplement 1.)

As previously discussed, (*see supra* Section III.D), Defendant's Plea Agreement contained a valid waiver, which waived his right to a direct appeal and to collaterally attack the conviction and sentence under 28 U.S.C. § 2255, except for ineffective assistance of counsel claims challenging the validity of the plea or the rights waiver. (*See* Doc. 729-2 at 3.) The Court finds that Defendant's arguments with regard to insufficient evidence and the existence of a viable defense fall squarely within such waiver, as such ground does not concern the validity of Defendant's plea or his rights waiver. The Court therefore rejects Defendant's request for relief on such basis.[2]

## IV.   Conclusion

For the reasons outlined herein, the Court GRANTS Defendant's Motion to Amend and/or Supplement Pursuant to § 2255 (Doc. 894), insofar as the Court considered the supplemental facts contained therein in ruling on Defendant's § 2255 Motion. The Court DENIES Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 806). Defendant's

---

[2] After the Government filed its response to Defendant's § 2255 Motion, Defendant filed a reply brief – namely, a Motion in Opposition of the Government's Response Motion Before the District Court (Doc. 885). Therein, Defendant raises certain arguments for the first time. For example, Defendant claims ineffective assistance of counsel due to Wallace's alleged failure to contest a misinterpretation of the applicable Sentencing Guidelines. (*See* Mot. in Opp'n of the Govt's Resp. Mot. 1-2.) Defendant also alleges ineffective assistance of counsel based on Root's failure to attend the sentencing hearing. (*See id.* 5.) The Court declines to consider such arguments, as "a court in a § 2255 proceeding does not consider arguments presented for the first time in a reply brief," because "to do so would unduly prejudice the respondent." *United States v. Arzate*, Nos. 05-3482-SAC, 03-40026-01-SAC, 2006 WL 3437540, at *3 (D. Kan. Nov. 28, 2006) (citing, *inter alia*, *United States v. Stults*, 137 Fed. Appx. 179, 182 (10th Cir. 2006); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000); *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) ("Nor do we consider arguments raised for the first time in a reply brief.")).

Motion to Expedite Ruling (Doc. 890) is DENIED AS MOOT. A Judgment in favor of the Government shall be entered separately.

Finally, the Clerk of the Court is directed to send a copy of this Opinion and Order to the United States Court of Appeals for the Tenth Circuit, as it relates to Case No. 10-5110 and responds to the Tenth Circuit's Order of October 26, 2010 (Doc. 895).

**DATED THIS 17th day of November, 2010**

*[Signature: Terence C. Kern]*

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**